# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Kelly Doerman,

    Plaintiff,

v.

Meijer, Inc.,

    Defendant.

Case No. 1:17cv571

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendant's Motion to Dismiss and Compel Arbitration. (Doc. 4). Plaintiff has filed a Response in Opposition. (Doc. 6).

Plaintiff Kelly Doerman brings claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*; the Ohio Civil Rights Act, Ohio Rev. Code 4112.01, *et seq.*; and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.*

### I. BACKGROUND

In 1996, Plaintiff applied for a pharmacy internship at Defendant Meijer, Inc. (Doc. 1 at ¶10). In 1999, Defendant hired Plaintiff as a pharmacist. (Id.) That same year, Plaintiff was diagnosed with a bulging disc in her lumbar spine. (Id.) Plaintiff alleges she notified her supervisor of the back pain caused by the bulging disc. (Id.) Plaintiff discussed the possibility of using a stool at work. (Id.) Plaintiff was repeatedly told that Defendant does not permit pharmacists to sit at any time in view of customers. (Id.)

In November of 2016, Plaintiff began using a coworker's stool to sit during shifts. (Id. ¶ 14). After learning that Plaintiff was using a stool, Plaintiff's supervisor requested a doctor's note. (Id. at 14). Plaintiff provided a note. (Id. at ¶16). Plaintiff's supervisor then

requested a second doctor's note. (Doc. 1 at ¶16).

In December of 2016, Defendant placed Plaintiff on an involuntary leave of absence under the FMLA, pursuant to a company policy against sitting during pharmacy shifts. (Doc. 1 at ¶17). After Plaintiff's attorney contacted Defendant and requested disability accommodations, Defendant allegedly began looking for a "suitable" stool and notified Plaintiff one was purchased on February 20, 2017. (Doc. 1 at ¶¶18-20). Plaintiff returned to work on March 1, 2017 and was terminated on March 9, 2017, for "taking an unauthorized leave because [Plaintiff] did not return from her involuntary leave of absence on February 3, 2017, before [Plaintiff's] accommodation was in place." (Doc. 1 at ¶ 21). However, Plaintiff alleges Defendant prevented her from returning to work before March 1, 2017. (Doc. 1 at ¶22).

Defendant moves to compel arbitration of Plaintiff's discrimination and disability claims, stating Plaintiff signed a binding agreement in her original employment application to arbitrate any dispute relating to termination. Defendant maintains that this Court should dismiss Plaintiff's claims with prejudice, and the parties should be compelled to resolve any disputes through arbitration.

**II.     ANALYSIS**

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, "promotes 'a liberal federal policy favoring arbitration agreements,' and [establishes that] 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Mason v. Synchrony Bank*, Case No. 3:17-cv-314, 2018 WL 527981, at *2 (S.D. Ohio Jan. 22, 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Despite this liberal federal policy favoring arbitration

agreements, arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

To evaluate if staying a case and compelling arbitration is appropriate, the Court must first determine if the "claim is generally subject to compulsory arbitration." *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 665 (6th Cir. 2003) (citing *Floss v. Ryan's Family Steak Houses*, Inc., 211 F.3d 306, 311 (6th Cir. 2000)). If arbitration is the appropriate legal remedy, then the validity of the agreement is analyzed. *Id.* "Because arbitration agreements are fundamentally contracts, [the Court reviews] the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Tillman v. Macy's, Inc.*, 735 F.3d 453, 456 (6th Cir. 2013) (quoting *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007)). Therefore, "generally applicable state-law contract defenses like fraud, forgery, duress, mistake, lack of consideration or mutual obligation, or unconscionability, may invalidate arbitration agreements." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 498 (6th Cir. 2004).

The burden of proving the claims are non-arbitrable rests on the party refusing arbitration. *See American Exp. Co. v. Italian Colors Restaurant*, 570 U.S. 228, 243, 133 S.Ct. 2304, 2315, 186 L.Ed.2d 41 (citing *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). "In evaluating motions or petitions to compel arbitration, courts treat the facts as they would in ruling on a summary judgment motion, construing all facts and reasonable inferences that can be drawn therefrom in a light most favorable to the non-moving party." *Stepp v. NCR Corp.*, 494 F. Supp. 2d 826,

829 (S.D. Ohio 2007) (citing *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847 (S.D. Ohio 2003)).

When Plaintiff applied to work for Defendant as a pharmacy intern in 1996, she completed an employment application. The employment application form completed by Plaintiff included this language: "I agree to arbitrate any claim, controversy, dispute or complaint arising out of or relating to the termination of my employment under any company arbitration policy and/or procedure which exists at the time of the termination of my employment and for which I am eligible." (Doc. 4-1, PageID# 25). Plaintiff also signed an acknowledgment that she received the "Team Member Handbook," which contains Defendant's policies and procedures. (Doc. 4-1, PageID# 26).

Over the course of Plaintiff's twenty-two year employment, Defendant has had a dispute resolution procedure in place. When Plaintiff signed her employment application in 1996, there was a "Termination Appeal Procedure" in effect since 1991. (Doc. 8-2).[1] In 2004, Defendant instituted its Dispute Resolution Policy ("2004 DRP"). (Doc. 4 at PageID# 17). The 2004 DRP, which was last amended in 2015, provides:

> Because circumstances change, the company may amend the DRP,

---

[1]The 1991 "Termination Appeal Procedure" provides:

> This procedure has been established to provide an exclusive, final and binding method for the company and any eligible associate to resolve all claims, controversies, disputes or complaints arising out of or relating to the associate's termination from employment, including any claims or complaints based on federal, state or local law. In the event an associate who is eligible to use this procedure has a complaint about his or her termination from employment, it will be resolved in accordance with this procedure.
>
> Notwithstanding the foregoing, decisions to terminate employment for business or economic reasons may not be challenged through this procedure. Decisions to terminate employment for business or economic reasons remain within the sole judgment and discretion of the company.

(Doc. 8-2, PageID# 79).

4

including the Arbitration Rules, from time to time by giving thirty calendar days' notice to team members. Of course, any amendments will not apply to any claims that arose prior to the date of the amendment. By continuing your employment after receiving notice of any amendments, you and the company mutually agree to be bound by those amendments. The company may also terminate the DRP at any time by giving thirty calendar days' notice to team members. Again, the termination of the DRP shall not apply to any claims that arose prior to the date of termination.

(Doc. 4, PageID# 27).

Plaintiff does not dispute that her claims are of a type that may be subject to an arbitration agreement. Instead, Plaintiff asserts she is not bound by any of Defendant's dispute resolution policies, including the 1991 "Termination Appeal Procedure" referred to in the 1996 employment application and the subsequent 2004 DRP.

The parties agree that Ohio law applies. Under Ohio law, contract formation occurs where the parties objectively manifest an intent to be bound. *Jones v. U-Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 933 (S.D. Ohio 2014) (citing *McSweeney v. Jackson*, 117 Ohio App.3d 623, 691 N.E.2d 303, 308 (Ohio Ct. App. 1996)). Plaintiff does not dispute that she agreed to the arbitration agreement when she signed her employment application in 1996. Instead, Plaintiff argues that she did not agree to the changes to the terms of the arbitration agreement in the 2004 DRP or the changes made to the 2004 DRP in 2015.

Ohio courts have found arbitration agreements are enforceable even where the employer retains the unilateral right to alter the agreement, provided that the agreement requires the employer to give advance notice of changes. *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 667-68 (6th Cir. 2003) (interpreting Ohio law); *see e.g.*, *Bell v. Hollywood Entm't Corp.*, No. 87210, 2006 WL 2192053, at *2 (Ohio Ct. App. Aug. 3, 2006) (arbitration agreement enforceable where agreement was equally applicable to both

5

employees and employer and employer was only able to modify or terminate the agreement on one day per year upon thirty-day notice to employees); *Crowe v. BE & K, Inc.*, No. 2:09-CV-873, 2010 WL 1640884, at *4 (S.D. Ohio Apr. 22, 2010) (concluding based on Ohio law that a thirty-days notice provision constitutes sufficient consideration to form a binding agreement); *Rupert v. Macy's, Inc.*, No. 1:09-cv-2763, 2010 WL 2232305, at *7 (N.D. Ohio June 2, 2010) (arbitration agreement enforceable where employer reserved the right to unilaterally cancel or modify the terms of the agreement but employer was required to provide employees thirty-days written notice of cancellation or modification to be effective).

There is nothing in the 1991 "Termination Appeal Procedure" which required Defendant to provide advance notice of changes to the procedure. The form on which Plaintiff acknowledged receiving Defendant's policies and procedures such as the "Termination Appeal Procedure" merely states:

> NEW POLICIES AND PROCEDURES MAY BE ADDED AND EXISTING ONES MODIFIED OR DELETED FROM TIME TO TIME. YOU WILL BE INFORMED WHEN SUCH A CHANGE WHICH AFFECTS YOU OCCURS. WRITTEN OR ORAL NOTICE OF CHANGES IN POLICY OR PROCEDURE MAY BE GIVEN TO YOU BY YOUR FIRST ASSISTANT IN DEPARTMENT MEETINGS OR OTHER INFORMATION MEETINGS, THROUGH THE POSTING OR DISTRIBUTION OF WRITTEN NOTICES, OR THROUGH THE ISSUANCE OF NEW MANUALS OR HAND- BOOKS. NOTICES MAY ALSO BE POSTED OR DISTRIBUTED FROM TIME TO TIME TO EXPLAIN OR SUPPLEMENT A PARTICULAR POLICY OR PROCEDURE. IT IS YOUR RESPONSIBILITY TO BE AWARE OF AND FOLLOW ANY NEW POLICIES OR PROCEDURES OR ANY CHANGES TO EXISTING ONES.

(Doc. 4-1, PageID# 26). Because there was nothing in the 1991 "Termination Appeal Procedure" or Plaintiff's acknowledgement of that procedure which required Defendant to give advance notice to the employees of any changes to the arbitration procedure, the

1991 "Termination Appeal Procedure" was unenforceable. *Accord Stanich v. Hissong Grp.*, Inc., No. 2:09-CV-0143, 2010 WL 3732129, at *7 (S.D. Ohio Sept. 20, 2010) (purported arbitration agreement is unenforceable where agreement contains no requirement of advance notice for modifications and merely states that "[a]ll such changes will be communicated through official notices ...."); *Redmond v. Big Sandy Furniture, Inc.*, No. 08CA12, 2008 WL 4966549, at *2-3 (Ohio Ct. App. Nov.19, 2008) (holding that employer's dispute resolution plan mandating arbitration was unenforceable because plan provided employer with unfettered authority to modify or terminate the plan at will); *Harmon v. Phillip Morris, Inc.*, 120 Ohio App.3d 187, 697 N.E.2d 270, 272 (Ohio Ct. App.1997) (arbitration provision of employer's dispute resolution program unenforceable on ground that employer was not required by plan to arbitrate its claims against employees and employer was able to amend or terminate the plan at any time).

In contrast, the 2004 DRP would be enforceable. The 2004 DRP specifically provides: "Because circumstances change, the company may amend the DRP, including the Arbitration Rules, from time to time by giving thirty calendar days' notice to team members." (Doc. 4, PageID# 27). However, there is no evidence that Plaintiff ever agreed to the 2004 DRP or its later amendments. As one court has explained:

> Under Ohio law, "[a]ssent to the terms of an otherwise enforceable arbitration agreement as a condition of continued employment is an acceptable and legally enforceable requirement." However, an arbitration agreement is unenforceable if a party does not have notice of the agreement. Ohio courts use an "actual notice" standard when analyzing notice unless there is a signed arbitration agreement.

*Sandor v. Gen. Elec. Co.*, No. 16-CV-1670, 2016 WL 6868452, at *2 (N.D. Ohio Nov. 22, 2016) (citing *Jones v. U–Haul Co. of Massachusetts & Ohio Inc.*, 16 F. Supp. 3d 922, 938 (S.D. Ohio 2014); *Dantz v. Am. Apple Grp., LLC.*, 123 Fed.Appx. 702, 707-708 (6th Cir.

7

2005); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000); *Lake Land Employment Group of Akron, LLC v. Columber*, 804 N.E. 2d 27, 32 (2004)); *see also Jones v. Carrols, L.L.C.*, 2015 WL 3623760, *2 (Ohio Ct. App. 2015) ("If [the plaintiff] did not have actual knowledge of the [arbitration policy], there is simply no way he could have assented to it, and, therefore, it would be impossible to conclude that he had agreed to its terms.").

Plaintiff states that she never received a copy of the 2004 DRP. (Doc. 6-1, Kelly Doerman Decl., ¶ 3). Defendant has not produced evidence that acknowledges Plaintiff's receipt of the 2004 DRP. Instead, Defendant claims that it emailed all employees with Meijer email addresses a notice of the 2004 DRP. (Doc. 4-1, p. 19; PageID# 41). Meijer attached a copy of that email to its motion. (Doc. 4-1, p. 22; PageID# 43). However, that email does not specifically contain Plaintiff's email address in the recipient field, rather, it merely states "MEIJER LIST." There is no evidence that Plaintiff's email address was included in the "MEIJER LIST" or that Plaintiff received the email. At the same time, Plaintiff denies receiving the email. (Doc. 6-1, Kelly Doerman Decl. ¶ 2). Plaintiff also denies reviewing the 2004 DRP with her store director, reviewing the 2004 DRP on the company's intranet, or reading about the 2004 DRP in the company's newsletter. (Doc. 6-1, Kelly Doerman Decl. ¶ 2). Finally, Plaintiff denies being notified of any amendments to the 2004 DRP. (Doc. 6-1, Kelly Doerman Decl. ¶ 5).

As one Ohio court has observed: "Although there are a number of cases dealing with the question of whether a party had reasonable notice of the arbitration agreement, this Court has not found a case from Ohio applying the reasonable notice standard in the absence of a signed contract." *Jones v. Carrols, L.L.C.*, 2015 WL 3623760, *3 (Ohio Ct.

of App. 2015)); *see also Hardwick v. Sherwin Williams Co.*, 2002 WL 31992364, *2 (Ohio Ct. App. Feb. 13, 2003) (finding a lack of mutual assent where there was no evidence that plaintiffs signed or acknowledged receipt of the dispute resolution procedure at the time of its distribution); *cf. Dantz*, 123 Fed.Appx. 708 (6th Cir. 2005) (where the plaintiff did not dispute receiving a copy of the dispute resolution program, "[m]utual assent is manifested by [the plaintiff's] continued employment after having been told explicitly that the arbitration agreement was a condition of her employment."). Because there is no evidence that Plaintiff signed or acknowledged receipt of the 2004 DRP or its amendments, Plaintiff cannot be compelled to arbitrate a dispute that she has not agreed to arbitrate.

### III.   CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss and Compel Arbitration (Doc. 4) is **DENIED**.

**IT IS SO ORDERED.**

                                         */s/ Michael R. Barrett*
                                         JUDGE MICHAEL R. BARRETT